DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

MARCH TERM, 1907.

---

HELEN G. FERGUSON, DEFENDANT IN ERROR, v. THE CENTRAL RAILROAD COMPANY ET AL., PLAINTIFFS IN ERROR.

Argued March 7, 1907—Decided June 17, 1907.

1. Plaintiff's action was brought to recover damages for the death of her husband, who was a fireman in the employ of the Central Railroad Company, and firing on an engine of that company running on the tracks of the Philadelphia and Reading company, in the State of Pennsylvania, and was killed by the derailment and overturning of the engine, caused by gravel, &c., deposited on the track by water flowing thereon in the time of a heavy rain. Defendants moved for a direction on the ground that the Philadelphia and Reading company had made such provision to divert the water and prevent its flowing on the track as reasonable prudence required, and that the fall of water on this occasion was extraordinary and unprecedented. There being evidence that the fall, though heavy, was not extraordinary, and that on a number of occasions before this occurrence the waters had flowed on the track and deposited gravel and sand thereon—*Held*, that whether that company had performed its duty in that regard was for the jury to determine, and it was not error to refuse a direction.

2. There was a flagman employed by the Philadelphia and Reading, stationed at the place where the obstruction was, who did not

691

give warning of it to the approaching train. That place was a crossing of the railroad by a highway at grade. It was claimed that, under the laws of Pennsylvania, such flagman was a fellow-employe of plaintiff's husband. Thereupon defendants asked an instruction that if the jury believed the cause of the accident was the failure of the flagman to give such warning, the plaintiff could not recover.—*Held*, (1) that under the construction of their laws by the courts of Pennsylvania, the flagman was not, under the circumstances of the case, the fellow-employe of plaintiff's husband, and (2) that there being proof that the instructions to the flagman were limited to the flagging of trains when he perceived danger, and that a train had safely passed the crossing just before, running through water thereon, and there being no proof that he could perceive the existence and danger of the obstructions, which were covered by flowing water, the request was properly denied.

3. A deposition taken under section 45 *et seq.* of the Revised Evidence act is admissible to be read in evidence, although the notice of taking the same did not assert that the person proposed to be examined was a material witness and a non-resident.

On error to the Supreme Court.

For the Central Railroad Company, *George Holmes.*

For the Philadelphia and Reading Railway Company, *Thompson & Cole.*

For the defendant in error, *John H. Backes.*

The opinion of the court was delivered by

MAGIE, CHANCELLOR. This action was brought by Helen G. Ferguson against the Philadelphia and Reading Railway Company and the Central Railroad Company to recover damages for the death of her husband, which occurred on May 18th, 1900, at or near Jenkintown, in the State of Pennsylvania.

The cause of action set forth in the two counts of plaintiff's declaration was substantially this: that plaintiff's husband was fireman in the employ of the Central railroad, and on May 18th, 1900, was firing upon an engine of that company which was drawing a train over the tracks of the Philadelphia and

Reading company under an agreement between the two defendant companies; that at or near Jenkintown stones, gravel and earth had been deposited on the track on which the train was running, by reason of which obstruction the engine was derailed and overturned, causing the death of plaintiff's husband, and that these obstructions were deposited there by the negligence of the defendant companies. Each count averred that the action was brought under the laws of the State of Pennsylvania, which give an action to the widow of a deceased person whose death results from the negligence of another.

Each defendant company interposed a plea of the general issue. In addition the Philadelphia and Reading company filed two special pleas in bar. By one of them it pleaded that the injury resulted from the negligence of a fellow-employe of plaintiff's husband in failing to give notice of the presence of the obstruction; by the other it pleaded that it had exercised due caution in preserving the track from becoming encumbered by stones, gravel, &c., and that those which were brought down and caused the derailment were deposited there by water falling from the clouds in an extraordinary storm, which then occurred.

The action has been twice tried. On the first trial the learned justice who presided nonsuited the plaintiff, on the ground that the evidence failed to justify a finding that the obstruction had caused the derailment. On error, this court reversed the judgment entered upon the nonsuit, upon the ground that there was evidence from which it might be legitimately inferred that the derailment was thus caused. *Ferguson* v. *Central Railroad Co., 42 Vroom* 647.

Upon a *venire de novo* the cause went to the jury, and there was a verdict for the plaintiff. Judgment was entered thereon, upon which this writ of error has been brought. The assignments of error which have been argued will alone be considered.

It is first contended that the trial justice erred in refusing to direct a verdict for defendants as requested. This contention is not put upon the ground that the evidence failed to justify an inference by the jury that the obstructions on

the track had caused the derailment. As the evidence in that respect was substantially the same as that which was before us on the former writ of error, our conclusion then announced would have been controlling. But the present contention is based upon a ground which requires some statement of facts to render intelligible.

The evidence makes it clear that at the place of derailment the track was crossed by a public highway at grade, and that the highway from the track rose in grade, and reached, at a point a little over three thousand feet distant, a height of one hundred and seventeen feet above the crossing. It was also proved that the land on each side of the highway sloped toward it, so that water falling thereon and absorbed would run to the highway, and mingling with water falling on it, would run down it to the crossing. The land was shown to be partly rocky and the soil not to be such as easily and quickly absorbs water.

From these conditions and the laws of nature applicable thereto, it is obvious that if the waters thus collected reached the crossing at the time of heavy rains and were not diverted, they might overflow the tracks and deposit thereon earth and gravel, and even stones, which would be a dangerous obstruction to the passage of trains.

In apparent recognition of these conditions the Philadelphia and Reading company had constructed on each side of the highway culverts or drains, designed to carry the water under the tracks. The claim of plaintiff was that those constructions were inadequate and were not a performance of the company's duty to care for the safety of trains upon the track. On the other hand, the claim of the company was that the constructions were adequate to provide for all water falling in times of ordinary storms, and that the storm which occurred at the time of the accident was an unprecedented and extraordinary storm, in respect to which it was not bound to make provision.

To justify the trial judge in withdrawing the case from the jury on this ground, the evidence must have rendered it clear and indisputable that the storm on this occasion was so extra-

ordinary and unprecedented that reasonable prudence would not have required the company to make provision for its disposition.

We are unable to find such evidence. Witnesses say that it was an unusually heavy fall of water. One witness says that it rained for a short time harder than he had ever seen. Other witnesses, while characterizing it as a heavy rain, speak of other rains as heavy. But the evidence does not make it clear that the fall of water on this occasion was extraordinary or unprecedented. It was testified to that on a number of previous occasions, especially during the year before this occurrence, and after improvements and changes of grade on the highway in question had been made, the water, falling in heavy rains, had risen over the track and thereon deposited obstructions of earth, gravel, &c., which had to be removed therefrom for the passage of trains. Under these circumstances, we think the trial judge would have erred in withdrawing the case from the jury by a direction for a verdict. This assignment of error cannot prevail.

The second assignment relied on is based on an exception to the refusal to charge the following request: "If the jury should believe that the proximate cause of the accident was the failure of the flagman at the crossing to warn the approaching train to stop, plaintiff cannot recover." This was requested upon the following facts disclosed by the evidence. The section foreman in the employ of the Philadelphia and Reading company was called by plaintiff and testified that he had employed a flagman who was working at the crossing at the time of the occurrence. He testified that he had directed him to keep free the mouth of the drain on the north side of the highway in times of heavy rain. On cross-examination he was asked to state what other instructions he had given the flagman, and he said: "I instructed him if he saw anything in the way of trains, to flag them;" and, again, to a question: "Is it the duty of the flagman to notify the approaching trains of danger at the crossing," he answered: "Yes, or to flag them himself if he sees danger, without instruction."

It is claimed by the defendants that this flagman, though employed by the Philadelphia and Reading company, was a fellow-employe of plaintiff's husband, who was an employe of the Central railroad. This claim is based upon the following provision of a statute of Pennsylvania:

"That when any person shall sustain personal injury or loss of life, while lawfully engaged or employed about the roads, works, depots and premises of a railroad company, or in or about any train or car therein or thereon, of which company said person is not an employe, the right of action in all such cases against the company shall be such only as would exist if such person were an employe; provided, that this action shall not apply to passengers."

This statute has been the subject of consideration and construction by the courts of Pennsylvania. In *Kelly* v. *Union Traction Co.,* 199 *Pa. St.* 322, the earlier cases in their courts were reviewed, and it was held that when one street railway company, owner of tracks in the street, permitted another like company to use their tracks, a car of the latter company, when using the tracks under such permission, was using for the time being the road of its own company, and employes on that car were in the service of that company and not in that of the company owning the tracks. An employe of one of the companies who was injured by the negligence of an employe of the other company was permitted to recover from the latter, and the statute above recited was held not to apply.

But it is argued that the Supreme Court of Pennsylvania, in the later case of *Keck* v. *Phila. & R. R. R. Co.,* 206 *Pa. St.* 501, have laid down a doctrine which, under the evidence before us, renders applicable to this case the act above recited. In the opinion in that case the court held that with respect to the applicability of the act four rules were deducible from the Pennsylvania cases: (1) When the same track is used by two railroad companies, it must be considered as the property of each while using it; (2) it is immaterial whether the use be by virtue of joint or several ownership, charter right, lease, license, or traffic agreement; (3) the plaintiff must not only be engaged in the work of a

railroad employe, but be so engaged for or upon the property of the railroad by whose negligence he is injured; (4) employes of each road accept the risks of their employment incident to their own road but not those incident to the operation of the other road, unless at the time engaged in some work for the other road or for both roads jointly.

The words quoted are relied upon to support this contention. It is urged that plaintiff's husband was working for both roads jointly. But we are unable to discover any evidence to that effect. There was an agreement entered into by the defendant companies, or by companies whose interests are now vested in them. It provided that each company should, at its own cost, maintain its own part of the whole line included in the agreement, and that engineers, firemen, conductors, &c., should be severally furnished "unless provision is made for employing them at joint expense." Plaintiff's husband was aiding in running an engine of his employer, the Central railroad, and was in no sense engaged in work for both roads jointly. The work done may have procured returns from freight or passenger traffic, which the roads apportioned between themselves, but the engine was run by an employe of the employer of plaintiff's husband, who was severally furnished according to the agreement.

But if this statute applied to this case, we think there was no error in refusing to charge the request under consideration. The flagman was not called as a witness. His instructions did not include signaling trains to stop, but only to flag them when he perceived danger, and that duty the witness, who gave him the instructions, declared would have arisen without instructions.

Now, the evidence disclosed nothing which would have required the jury to find that any visible danger could have been perceived by the flagman. Some little time before the occurrence water was running over the rails of the track. A passenger, coming to the station, had waded through it, and the water reached to her ankles. Three minutes before the occurrence, a passenger train, going in the same direction, passed

over the crossing through the water which was still running over the rails. It was scheduled to stop at the station, was going slowly and passed in safety. When the train in question arrived, going at a much greater speed, the water was still running over the rails and necessarily concealing the deposit thereon. Upon this state of facts no breach of duty can be·charged to the flagman.

The remaining assignment of error is based upon exceptions· taken to the admission in evidence and permission to read· a deposition of one James F. Martell, taken before a Master in Chancery of this state, in the State of Pennsylvania under legislation contained in section 45 *et seq.* of the Revised Evidence act of 1900. *Pamph. L:* 1900, *p.* 362. Several objections to the admission of this deposition were made, but only one has been suggested in this argument as indicating error. That objection was that the notice of the taking of the examination of the witness did not state that the witness proposed to be examined·was a material witness for plaintiff, or that he resided out of this state.

It is obvious that a statement of the materiality and non-residence of the witness is not expressly required by section 45, which simply requires notice of the time and place of the examination and the name of the witness to be examined. The insistment is that it must be inferred that the legislature intended to require notice that would indicate the right of the party to take·the examination under this section. But while these provisions for taking the evidence of foreign or sick witnesses are in derogation of former practice, and therefore to be strictly construed (*Case* v. *Garretson,* 25 *Vroom* 42), we know of no rule that requires us to add to the legislative express requirement·any additional·incident unexpressed. The legislative scheme, with respect to the propriety of ·admitting such evidence, seems ·to have permitted it· to be taken·upon the notice, required under ·section 45, to· be admitted on the trial only upon proof to the satisfaction of the court, that·the· witness resided or is out, of the state, and that notice of the taking thereof was given as prescribed by the forty-fifth section.

While the legislature might, perhaps, properly have required the notice to include a statement of the residence and materiality, it is not for the court to add to what it deemed proper to require. This objection cannot prevail.

None of the causes of error assigned being sufficient to require the reversal of this judgment, it must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 14.

*For reversal*—None.